# EXHIBIT A

Jason M. Kerr (8222)
Christopher B. Sullivan (11053)
Alan Dunaway (13514)
PRICE PARKINSON & KERR, PLLC
5742 West Harold Gatty Drive, Suite 101
Salt Lake City, UT 84116
Telephone: (801) 530-2900
Facsimile: (801) 517-7192
Email: jasonkerr@ppktrial.com
       ronprice@ppktrial.com
       alandunaway@ppktrial.com

Attorney for Plaintiff

## IN THE THIRD JUDICIAL DISTRICT COURT
## COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| Novex Biotech, LLC, a Utah Limited Liability Company. | |
| Plaintiff, | **SUMMONS** |
| vs. | Civil No. 190901923 |
| ChromaDex, Inc., a California Corporation and Does 1-10. | Judge: Su Chon |
| Defendant. | |

**THE STATE OF UTAH TO:**

**ChromaDex, Inc.**
**10005 Muirlands Blvd, Suite G**
**Irvine, CA 92618**

You are hereby summoned and required to file an answer in writing to the attached Complaint with the clerk of the above-entitled Court, located at the Third Judicial District Court, 450 S. State Street, PO Box 1860, Salt Lake City, Utah 84114, and to serve upon or mail to

Plaintiff's attorneys at the address listed above a copy of said answer, within thirty (30) days after service of this summons upon you.

If you fail to do so, judgment by default will be taken against you for the relief demanded in said Complaint, which has been filed with the clerk of said Court and a copy of which is herewith served upon you

Dated this 11th day of March 2019.

_____
Jason M. Kerr
Price Parkinson & Kerr, PLLC
Attorney for Plaintiffs

Serve Defendant at:

**10005 Muirlands Blvd, Suite G**
**Irvine, CA 92618**

Jason M. Kerr (8222)
Christopher B. Sullivan (11053)
Alan Dunaway (13514)
PRICE PARKINSON & KERR, PLLC
5742 West Harold Gatty Drive, Suite 101
Salt Lake City, UT 84116
Telephone: (801) 530-2900
Facsimile: (801) 517-7192
Email: jasonkerr@ppktrial.com
ronprice@ppktrial.com
alandunaway@ppktrial.com

# IN THE THIRD JUDICIAL DISTRICT COURT, COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| Novex Biotech, LLC, a Utah Limited Liability Company. <br><br> Plaintiff, <br><br> vs. <br><br> ChromaDex, Inc., a California Corporation and Does 1-10. <br><br> Defendants | **COMPLAINT AND JURY DEMAND** <br><br> Case No. 190901923 <br><br> Judge: Su Chon |

Plaintiff Novex Biotech, LLC ("Novex") sues ChromaDex, Inc. ("ChromaDex") and presently unknown parties whose identities will be revealed during discovery, and who or which are denominated "John Does 1-10" in this Complaint, for false advertising and unfair competition under the Lanham Act, unfair competition and unjust enrichment under Utah law, and declaratory and injunctive relief and alleges as follows:

## SUMMARY OF ALLEGATIONS

Novex markets and sells Oxydrene® Elite ("Oxydrene"), which has been shown in a double-blind, clinical trial to increase endurance, improve aerobic power, increase VO2 max, and improve physical performance. Novex spent significant time and resources developing the formula for Oxydrene and assuring that the claims it makes about Oxydrene are true.

ChromaDex, on the other hand, is making false claims about its competitive Tru Niagen product, giving ChromaDex an illegal and unfair advantage over Novex's Oxydrene. Specifically, ChromaDex claims that Tru Niagen increases NAD, a natural component of human cells, by 60%. However, ChromaDex's own studies show that Tru Niagen does not increase NAD at the dosage sold. ChromaDex further falsely claims that as a result of this increase in NAD, consumers can expect a host of anti-aging and other benefits. However, when Tru Niagen had no beneficial effect.

ChromaDex's wrongful conduct has harmed, and continues to harm Novex because consumers are confused by ChromaDex's false claims. And ChromaDex has an unfair competitive advantage over Novex as a result of these false claims.

## PARTIES

1. Novex is a limited liability company organized and existing under the laws of the State of Utah. Its principal place of business is Salt Lake City, Utah. Novex produces, markets, and sells Oxydrene.

2.      ChromaDex, Inc. is, on information and belief, a California corporation. Its principal place of business is located at 10005 Muirlands Blvd, Suite G, Irvine, CA 92618.

3.      Defendants Does 1-10 are unknown at this time but are believed to be individuals and entities involved in the development, production, marketing, distribution, or sales of the offending products or other related products.

## JURISDICTION AND VENUE

4.      This is an action for false advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq*.

5.      The Court has subject matter jurisdiction under Utah Code Ann. § 78A-5-102(1) and Utah Code Ann. § 78B-6-401.

6.      The Court has personal jurisdiction over ChromaDex pursuant to the Utah Long Arm Statute, Utah Code Ann. § 78-27-24 because ChromaDex has (a) transacted business in this State, and (b) engaged in tortious activity causing injury in this state. Moreover, ChromaDex has contracted to supply goods within the State of Utah. ChromaDex also has caused injury to the Plaintiff in the State of Utah through false advertisements of the Tru Niagen product at issue in this dispute. Thus, this Court has both general and specific personal jurisdiction over ChromaDex.

## GENERAL ALLEGATIONS

### Novex's Product

7.      Novex markets and sells dietary supplement products, including Oxydrene. The ingredients in Oxydrene have been shown in a double-blind placebo

controlled clinical trial to increase endurance, improve aerobic power, increase VO2 max, and improve physical performance.

8. In addition, Novex invests substantial sums to assure that Oxydrene is manufactured to very high standards so that it meets or exceeds the quality and other characteristics of the compounds identified in the scientific literature, which support the product's efficacy.

9. Novex is so confident in its products that, for every product it develops and brings to market, Novex offers a 100% money-back guarantee to every consumer. All a consumer needs to do if dissatisfied with the products for any reason is to return the unused portion for a full refund within 30 days of purchase.

10. Novex sells Oxydrene through its own website and *via* retail outlets to consumers throughout the United States.

11. Novex advertises and promotes Oxydrene on the Internet and in print media.

12. Novex has expended a great deal of time, effort, and money to develop and market Oxydrene.

### ChromaDex's False and Misleading Advertising

13. ChromaDex sells a product it calls "Tru Niagen," which competes with Novex's Oxydrene.

14. ChromaDex markets and sells Tru Niagen in a nationwide advertising campaign through ChromaDex's websites and other publications.

15. Among other things, Chromadex claims that "TRU NIAGEN® is a unique form of vitamin B3 clinically proven to safely increase your cell's ability to make energy, with NAD" and claims that "Tru Niagen increases your NAD, every time you take it." Chromadex also claims that Tru Niagen is "proven to increase NAD levels."

16. Chromadex claims that its product is proven by "4 Published Human Clinical Trials" and that "[a]ll four peer-reviewed published clinical trials confirm Niagen is a safe and efficient way of increasing NAD levels in humans." Chromadex further claims that that "Tru Niagen is a unique form of vitamin B3 clinically proven to safely increase your cell's ability to make energy, with NAD."

17. Chromadex also claims that "[o]ur key ingredient is found in nature, but not in high enough quantities to make a real difference to your NAD levels. So, we designed a supplement that would."

18. ChromaDex represents that "NIAGEN® increases NAD by 60%." But then in a footnote disclose that this was "On average at 1000 mg / day." This representation is highly misleading, at best, due to the fact that Tru Niagen is not dosed at 1000 milligrams per day, but is dosed at just one fifth of that amount, at 250 milligrams per day. (In some advertising, ChromaDex claims that the dosage is actually 300mg per day, but in any event, the dosage is far too low to have an effect.) Reasonable consumers who do not check this footnote and then compare it with the actual dosage of Tru Niagen are likely to be deceived into believing that Tru Niagen increases NAD by 60%.

19. The Supplement Facts section on the Tru Niagen bottle lists a serving size of two capsules for a total serving size is "250 mg" and states "SUGGESTED USE: Adults take 2 capsules daily or as recommended by your healthcare professional."

20. Indeed, its New Dietary Ingredient Notification submission to the Food and Drug Administration, ChromaDex represented to the FDA that "[e]ach capsule (one serving) contains NIAGEN® at a level of no more than 300 mg" and that "[c]onsumers are recommended to take no more than one capsule or one serving a day." ChromaDex then represented that this provides for "a daily intake of NIAGEN® of no more than 300 mg."

21. According to the FDA, in an amended notification, Tru Niagen represented that the conditions of use are "take 2 capsules, each containing 125mg NIAGEN®, for a daily serving of 250 mg NIAGEN® ... Consumers are recommended to take no more than 300 mg NIAGEN® a day or as recommended by their healthcare professional."

22. Thus, by law, ChromaDex cannot provide Tru Niagen in a dose anywhere close to the amount that ChromaDex itself claims resulted in the advertised benefit.

23. But the problems with Tru Niagen are much deeper than that because ChromaDex's own studies show that Tru Niagen does not result in any of the advertised anti aging or fitness benefits, even at the unlawful 1000 mg per day dose.

24. ChromaDex prominently advertises on its website that it's product will "**Increase Energy**" and "**Enhance Muscle Recovery**." However, ChromaDex's own studies, which it touts, demonstrated that Tru Niagen does not increase energy, give an

energy boost, increase endurance, or enhance muscle recovery. One of theses studies, cited by Defendants, a 2018 study by Martens, *et al.* ("the Martens study"), found that for people taking Tru Niagen, total energy intake and expenditure, oxidative fuel source (carbohydrate vs. fat), and physical activity patterns were not affected by the product. There was no observed difference in body mass, body mass index (BMI), or percent body fat compared to placebo; no differences were observed in measures of glucose or insulin regulation; effect on overall motor function, maximal exercise capacity, as assessed by VO2max and treadmill time to exhaustions; and no effect on markers of submaximal exercise performance.

25.     Likewise, a 2018 study by Dollerup, *et al.* ("the Dollerup study"), also cited by ChromaDex, found that Tru Niagen does not improve insulin sensitivity and does not improve whole-body glucose metabolism.

26.     Indeed, all benefit parameters observed in the studies touted by ChromaDex were not significant over placebo. In short, ChromaDex has tested for the very benefits it claims Tru Niagen will confer on consumers and knows from the results of those studies that Tru Niagen does not confer those advertised benefits.

27.     Furthermore, ChromaDex's own main study, a 2016 study by Trammell, *et al.* (the "Trammell study"), which ChromaDex claims shows that Tru Niagen increases NAD levels, actually shows that Tru Niagen does not boost NAD levels and that there was no statistical increase whatsoever in NAD at the dosage of Tru Niagen.

28.     A statistical analysis of the Trammell study shows that the study authors misstated the P Value by factor of 10. When the true P Value is applied, the Trammell

study actually shows that there is no statistically significant increase in NAD at doses near what is present in Tru Niagen.

29. Thus, ChromaDex's claim that Tru Niagen increases NAD is demonstrated to be false by the very study ChromaDex relies on.

### FIRST CLAIM FOR RELIEF
### (False advertising in violation of the Lanham Act 15 U.S.C§ 1125(a)(l)(B))

30. The allegations in the preceding paragraphs are incorporated herein.

31. ChromaDex's advertising for its Tru Niagen product is expressly false. ChromaDex is using false, deceptive and/or misleading descriptions in commercial advertising and marketing that misrepresent the nature, characteristics, and/or qualities of the TRU NIAGEN product in interstate commerce.

32. ChromaDex's false and misleading statements, including the advertising and marketing of the product, actually deceive or have the tendency to deceive a substantial segment of their audience.

33. ChromaDex's false and misleading statements are material and likely to influence the purchasing decisions of actual and prospective purchasers of ChromaDex's products and/or Novex's products.

34. ChromaDex's false and misleading statements will divert sales at the expense of Novex's Oxydrene product and/or have or will lessen the goodwill enjoyed by Oxydrene.

35. ChromaDex's acts constitute false advertising in violation of the Lanham Act § 43 (a)(l)(B), 15 U.S.C. § 1125 (a)(l)(B).

36. ChromaDex's acts and false advertising have deceived and, unless restrained, will continue to deceive the public, including consumers and retailers, and have injured and, unless constrained, will continue to injure Novex and the public, including consumers and retailers, causing damages to Novex in an amount to be determined at trial and other irreparable injury to the goodwill and reputation of Novex's Oxydrene product.

37. ChromaDex's acts of false advertising are willful, intentional, and egregious and make this an exceptional case within the meaning of 15. U.S.C. § 1117(a).

38. Novex has no adequate remedy at law to compensate it for all the damages ChromaDex's wrongful acts have and will cause. Therefore, Novex is entitled to an injunction under 15 U.S.C. § 1116, restraining ChromaDex, its agents, employees, and representatives from engaging in future acts of false advertising and ordering removal of all of ChromaDex's false advertisements.

### SECOND CLAIM FOR RELIEF
(Unfair Competition In Violation of Lanham Act 15 U.S.C. § 1125(a)(l)

39. The allegations in the preceding paragraphs are incorporated herein.

40. ChromaDex has, in connection with the promotion and sale of its goods in interstate commerce, made or contributed to the making of false or misleading descriptions or representations of fact which are likely to cause confusion, or to cause mistake, or to deceive purchasers and potential purchasers into believing that ChromaDex's products and services are of the same or similar quality as Novex's products because of ChromaDex's false and misleading statements as to qualities and characteristics of their products.

41. ChromaDex's acts constitute unfair competition and/or induce or contribute to acts of unfair competition.

42. Defendant's acts of unfair competition have deceived and, unless restrained, will continue to deceive the public, including consumers and retailers, and have injured and unless constrained will continue to injure Novex and the public, including consumers and retailers, causing damages to Novex in an amount to be determined at trial and other irreparable injury to the goodwill and reputation of Novex and to its Oxydrene products.

43. ChromaDex's acts of unfair competition are willful, intentional and egregious and make this an exceptional case within the meaning of 15. U.S.C. §1117(a).

44. Novex has no adequate remedy at law to compensate it for all the damages ChromaDex's wrongful acts have and will cause. Therefore, Novex is entitled to an injunction under 15 U.S.C. § 1116, restraining ChromaDex, its agents, employees, and representatives from engaging in future acts of unfair competition and ordering removal of all of ChromaDex's false advertisements.

### PRAYER FOR RELIEF

WHEREFORE, Novex respectfully requests the following relief:

A. A permanent injunction against ChromaDex, its officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with it who receive actual notice of the injunction by personal service or otherwise, enjoining and restraining them from directly

or indirectly engaging in future acts of false advertising and unfair completion.

B. Judgment on all claims for the damages suffered by Novex as a result of ChromaDex's false advertising and unfair competition, in an amount to be determined at trial.

C. Judgment directing an accounting by ChromaDex of its profits by reason of its unfair competition and false advertising.

D. Judgment on the first and second claims trebling Novex's recovery pursuant to 15 U.S.C. § 1117, as a result of ChromaDex's willful and intentional violations.

E. Judgment on the first and second claims awarding Novex reasonable attorneys' fees in this action, pursuant to 15 U.S.C. § 1117.

F. Judgment awarding ChromaDex's profits to Novex, and awarding damages sustained by Novex and the costs of the action.

G. Judgment for punitive damages as a result of ChromaDex's outrageous conduct and willful and intentional violations.

H. Judgment on all claims awarding Novex costs and attorneys' fees in this action.

I. Declaratory relief as requested.

J. Injunctive Relief as requested.

K. Such other relief as the Court may deem just and equitable.

DATED this 6th day of March, 2019.

        PRICE PARKINSON & KERR, PLLC

        /s/ Jason M. Kerr
        Jason M. Kerr
        Attorneys for Plaintiff