Jason M. Kerr (8222)
Christopher B. Sullivan (11053)
Alan Dunaway (13514)
Steven W. Garff (13707)
PRICE PARKIN SON & KERR, PLLC
5742 West Harold Gatty Drive, Suite 101
Salt Lake City, UT 84116
Telephone: (801) 530-2900
Facsimile:  (801) 517-7192
Email: jasonkerr@ppktrial.com
      ronprice@ppktrial.com
      alandunaway@ppktrial.com
      stevengarff@ppktiral.com

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| **NOVEX BIOTECH, LLC,** a Utah Limited Liability Company.<br><br>    Plaintiff and Counter-claim Defendant,<br><br>**vs.**<br><br>**CHROMADEX, INC.,** a California Corporation and **DOES 1-10**.<br><br>    Defendants and Counter-claim Plaintiff. | **PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM**<br><br>Case No. 2:19-cv-00271-JNP-PMW<br><br>The Honorable Judge Jill N. Parrish<br><br>Magistrate Judge Paul M. Warner |

Plaintiff Novex Biotech, LLC ("Novex"), pursuant to Fed. R. Civ. P. 8, 9(b), and 12(b)(6) hereby moves the Court to dismiss ChromaDex Inc.'s ("ChromaDex") Counterclaim.

**I.    Background and Introduction.**

Plaintiff Novex brought this lawsuit against Defendant CromaDex due to the false claims that CromaDex makes about its product Tru Niagen.  Tru Niagen is marketed as an anti aging product and is advertised to increase NAD levels by 60% and to result in a host of benefits including increased energy and enhanced muscle recovery, among others.  As the Complaint carefully spells out, these representations are false and unsubstantiated.  The study that ChromaDex relies on in claiming that Tru Niagen increases NAD levels by 60% tested a daily dosage of 1,000mg of Tru Niagen's "active ingredient."  Complaint ¶ 20.  However, Tru Niagen contains only one quarter of that amount (two capsules of 125mg each, for a total daily does of 250mg) and ChromaDex is not allowed by law to provide consumers with more than 300mg a day.  *Id.* at ¶¶ 21-24.  Thus, CromaDex's claim that its product increases NAD levels by 60% is both unsubstantiated and false.  Furthermore, as the Complaint spells out, three scientific studies tested Tru Niagen's active ingredient and found that it does not result in the increased energy, increased muscle recovery, and other benefits which ChromDex claims its product causes.  *Id.* at ¶¶ 26-31.  ChromaDex's claims are proven false by specific scientific studies, at least a couple of which ChromaDex is aware of.  *Id.*

Novex markets and sells Oxydrene® Elite ("Oxydrene"), which has been shown in a double-blind, clinical trial to increase endurance, improve aerobic power, increase VO2 max, and improve physical performance.  *Id.*  at ¶ 7.  ChromaDex's Tru Niaen directly competes with Novex's Oxedrene and CromaDex's false claims give CromaDex an illegal and unfair advantage over Novex's Oxydrene.  *Id.*  at ¶ 13.  Thus, Novex has brought this lawsuit against ChrmaDex for false advertising and unfair competition under the Lanham Act.

ChromaDex has retaliated with its own Counterclaim under the Lanham Act and California consumer protection statutes, arguing that Novex is the one making false claims about

its product. However, CromaDex offers no facts that indicate how or why any of Novex's claims are false. ChromaDex's Counterclaim is no more than a formulaic recitation of the elements, offering no more than labels and conclusions and naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, ChromaDex defends itself against Novex's complaint by alleging that the products don't even compete in the first place and fails to allege in its Counterclaim that the products actually compete. Indeed, ChromaDex goes so far as to allege facts that, if true, would mean that the products do not compete at all. *See* Counterclaim at Counterclaim at ¶ 65. Thus, ChromaDex lacks standing to bring its Counterclaim under Article III, the Lanham Act, and California law.

## II. ChromaDex Lacks Standing under the Article III, the Lanham Act, and Californian Law Because it Does not Allege that Oxedrene Competes with TruNiagen.

CromaDex specifically denies that its product competes with Plaintiff's product. Plaintiff's Complaint alleges, "ChromaDex sells a product it calls 'Tru Niagen,' which competes with Novex's Oxydrene." Complaint at ¶ 13. In its Answer to this allegation, CromaDex responds, "Chromadex admits that it sells TruNiagen. ChromaDex otherwise denies the allegations in this paragraph." Answer and Counterclaim at 3. And in bringing its Counterclaim ChromaDex only goes so far as to allege that: "*If* Novex and ChromaDex compete—as alleged by Novex—Novex's false claims have harmed ChromaDex in the marketplace, in an amount to be proven at trial." Counterclaim at ¶ 65 (emphasis added). This is not an allegation that the products compete, and it certainly does not contradict or negate ChromDex's clear denial that the products compete. Indeed, ChromDex goes so far allege that "NIAGEN and Oxydrene are not even remotely comparable products." *Id.* Thus, ChromDex's qualified conclusion that "[a]ny consumer who has purchased or will purchase Oxydrene based on its false marketing statements

3

and incorrect comparisons to NIAGEN is a lost customer for ChromaDex" is negated and rendered implausible. *Id.* at ¶ 66. *See Iqbal*, 556 U.S. at 678.[1] ChromaDex has asserted that the products do not compete with each other and the not even remotely comparable. Thus, none of its consumers can be lost to Novex, according to ChromaDex.

As a result, Chromadex lack basic Article III standing which requires that "[t]he plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014). Because ChromaDex does not allege that Novex's products compete with its own, it cannot possibly show any injury in fact that is fairly traceable to any conduct by Novex. Nor can ChromDex show that any damage would likely be redressed if the court were to restrain acts of someone who is not competing with ChromDex or disparaging its products.

Likewise, Chromdex lacks standing under § 1125(a) to bring its Lanham Act cause of action. To state a Lanham Act cause of action, a complaint or counterclaim must show that "the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products*." Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (citing *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242, 244 (9th

---

[1] To any extent that CromaDex may appear to try and claim the products do in fact compete, ChromaDex should be prohibited "from deliberately changing positions according to the exigencies of the moment," *New Hampshire v. Mai*ne, 532 U.S. 742, 750, 121 S. Ct. 1808, 1814, 149 L. Ed. 2d 968 (2001) (quoting *United States v. McCaskey*, 9 F.3d 368, 378 (C.A.5 1993)). *See also Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 795 (7th Cir. 2013) (courts should be protected from being "manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories") (quoting *Ogden Martin Systems of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 527 (7th Cir.1999)).

Cir.1990); accord *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 964 (D.C.Cir.1990)).  The Supreme Court has held that "to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 131–32.  ChromaDex has not alleged either.  Nowhere in its Counterclaim does ChromaDex make a single factual allegation of harm to its reputation.  And because ChromaDex does not allege that Novex's product competes with its own, it lacks any basis to plausibly allege any lost sales as being caused by Novex.  Indeed, The Supreme Court pointed out that proximate cause is an absolute prerequisite for Lanham Act standing.  *Id.* at 132.  To show proximate cause, a plaintiff must show that the injury flows directly from the alleged wrong because its causes consumers to withhold trade from the plaintiff.

> We thus hold that a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff.

*Id.* at 133.  Because ChromDex alleges that its products are not in competition with Novex's and "NIAGEN and Oxydrene are not even remotely comparable products," it cannot plausibly allege this necessary connection and its Lanham Act claim necessarily fails.  Counterclaim ¶ 65.

ChromaDex's California state law claims fail for the same reason. As the Central District of California explained:

> Propositions 64 eliminated so-called "unaffected plaintiff" standing. Under both the UCL and the FAL, a plaintiff must now have suffered injury and lost money or property. The new statutory language allows for only those claims brought "by any person who has suffered an injury in fact and has lost money or property as a result of such unfair competition."

*Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1136–37 (C.D. Cal. 2005) (quoting Prop 64, § 3/ CA Bus. & Prof. Code § 17204).  *See also Degelmann v. Advanced Med. Optics, Inc.*, 659 F.3d 835, 839 (9th Cir. 2011).  Indeed, the very purpose of the Prop 64 amendment to the UCL

5

and FAL was to prevent attorneys "from filing lawsuits for unfair competition where they have no client who has been injured in fact." *Wilson v. Frito-Lay N. Am., Inc*., 260 F. Supp. 3d 1202, 1209 (N.D. Cal. 2017).

> To satisfy the UCL standing requirement, the plaintiff must '(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim

*Demeter v. Taxi Computer Servs., Inc*., 21 Cal. App. 5th 903, 915, 230 Cal. Rptr. 3d 817, 825 (Ct. App. 2018). Nowhere in the Counterclaim does ChromaDex provide a single fact showing that it is has even been harmed in the first place.[2]

Furthermore, California law requires that "there must be a causal connection between the harm suffered and the unlawful business activity. That causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law." *Two Jinn, Inc. v. Gov't Payment Serv., Inc*., 233 Cal. App. 4th 1321, 1332 (2015) (quotation and citation omitted). *See also id* at 1333 (noting a failure by the plaintiff to show that it actually lost customers as a direct result of the defendant's allegedly unlawful activity). "In order to pursue a UCL claim, the plaintiff must show that the practices that it characterizes as unlawful caused it to suffer an actual economic injury." *Id. See also Hall v. SeaWorld Entm't, Inc*., 747 F. App'x 449, 452 (9th Cir. 2018) ("Other than Plaintiffs' problem with the general idea of orcas being in captivity at all, nothing in the SAC suggests that SeaWorld's violation of §

---

[2] The only allegation that comes close is ChromaDex's assertion that it has been harmed by the fact that Novex has brought this litigation. Counterclaim at ¶ 67. However, this not a permissible theory for civil liability under either Utah or California law. *Price v. Armour*, 949 P.2d 1251, 1256 (Utah 1997) ("An absolute privilege is granted to participants in judicial proceedings"); *Moore v. Conliffe*, 7 Cal. 4th 634, 640–41 (1994) ("the Legislature has accorded an absolute privilege or immunity to statements made in a number of contexts: in any… (2) judicial proceeding").

6

597(b) 'caused' Plaintiffs' economic injury"). ChromaDex may not like Novex's advertising, but unless the Counterclaim can show that this adverting caused harm to Chromadex, it lacks standing to pursue its claims. Because the Counterclaim fails to allege any competition between the products, it cannot show such a causal connection, nor can it show that it would not suffer the same harm absent Novex's advertising, and ChromaDex's UCL and FAL causes of action fail. *Two Jinn, Inc.*, 233 Cal. App. 4th at 1332 (2015).

### III. ChromaDex Fails to Allege Facts Showing Novex's Advertising is False as required by the Lanham Act.

"Allegations that a company made fraudulent misrepresentations are subject to Rule 9(b)'s requirement that the parties state their claims 'with particularity.'" *Aloudi v. Intramedic Research Grp., LLC*, 729 F. App'x 514, 516 (9th Cir. 2017). *See also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir.2009)). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud," including "the who, what, when, where, and how of the misconduct charged." *Kearns*, 567 F.3d at 1124. Claims for fraud must be based on facts "specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge." *Id*. In addition, Rule 8 requires a that complaint or counterclaim set forth a "short and plain statement ... showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to comply with Rule 8, a complaint must "state a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief

*Id*. at 680.  A pleading that offers "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

ChromaDex offers 3 theories under which it asserts that "Novex's Claims For Oxydrene Are False and Misleading."  Counterclaim at 20.  The first is that "Oxydrene is Not Revolutionary, New, Or Proprietary." *Id.*  The second is that "Oxedrene Does Not Provide the Promised Benefits."  *Id.* at 20-21.  And the third is that "Oxydrene's Claims Are Not Clinically Validated Through A Human Trial." *Id.*  at 21.  The first theory is based on the mere facts that Novex has not obtained a New Dietary Ingredient approval from the FDA and that Novex's formula is comprised of known ingredients.  These facts, accepted as true, do not show that any representation by Novex is false.  Furthermore, claims that a product is "new," "revolutionary," or "proprietary," are too vague, as a matter of law to be actionable under the Lanham Act and amount to mere puffery.  The second and third theories completely lack supporting factual allegations and fail because they are mere conclusions.  *Twombly*, 550 U.S. at 555.  Novex with address each of these in turn.

### A.  Chromadex's argument that Oxydrene is not revolutionary new or proprietary

ChromaDex contends that Novex's claim that its Crenulin-RCC2 formula is "new," "revolutionary," and "proprietary" is false because the formula "is comprised entirely of garden variety commodity ingredients that have been available on the market for years" and because "Novex has never submitted an new dietary ingredient notification to the FDA for approval." Counterclaim at ¶¶ 50-52. But the Counterclaim provides no plausible connection from these facts that would render Novex's adverts false.  Novex does not claim to have a new ingredient or to have a new dietary ingredient from the FDA.  Nor doe Novex claim that it formula is

comprised of ingredients that did not already exist.  Thus, even if these allegations are true, they do not mean that that any of Novex's representations are false.

Under section 413(a)(2) of the Federal Food, Drug, and Cosmetic Act (FD&C Act) (21 U.S.C. 350b(a)(2)), the manufacturer or distributor of a new dietary ingredient (NDI) that has not been present in the food supply as an article used for food, or a dietary supplement containing such an NDI, must submit a premarket safety notification to FDA at least 75 days before introducing the product into interstate commerce.  "New Dietary Ingredient" is defined as follows:

> For purposes of this section, the term "new dietary ingredient" means a dietary ingredient that was not marketed in the United States before October 15, 1994 ***and does not include any dietary ingredient*** which was marketed in the United States before October 15, 1994.

21 U.S.C.A. § 350b (emphasis added).  Thus, by law, a formula or compound does not require approval as a New Dietary Ingredient as long as it contains dietary ingredients that were marketed in the U.S. before the effective date of the act.  And as the Counterclaim alleges, Novex represents that Oxydrene "contains a 'revolutionary new ***compound***' and 'proprietary ***formula***.'"  Counterclaim at ¶ 44 (emphasis added).  And Novex's advertising specifically refers to the "Crenulin-RCC2 formula."  The FDA itself has explained that a formula is a collection of ingredients and is not itself a dietary ingredient in its definition of the word "formulation:"

> Formulation: A formula that (1) lists the identity and quantity of each dietary ingredient and other ingredients (formulation aids) of a dietary supplement, and (2) describes the administered form (e.g., powder, liquid, capsule, etc.).

*See* Dietary Supplements: New Dietary Ingredient Notifications and Related Issues: Guidance for Industry at 97.[3]  Novex does not claim that it has a brand new "ingredient," and the

---

[3] Available at https://www.fda.gov/regulatory-information/search-fda-guidance-documents/draft-guidance-industry-new-dietary-ingredient-notifications-and-related-issues.

Counterclaim does not allege that it does. The fact that the individual ingredients of a formula are not new, does not mean that the formula itself is not new. The Counterclaim does not allege that the formula itself is not new, revolutionary, or proprietary, which are the actual representations that Novex makes. As such, Novex's claim to a new and revolutionary formula or compound is not false and the Counterclaim fails to provide any facts showing that it is false.

Furthermore, an advertising claim that a product is "revolutionary" and "unique" "is so vague that it can be understood as nothing more than mere expression of opinion." *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc*., 649 F. Supp. 2d 702, 725 (N.D. Ohio 2009) (quoting *2 Pizza Hut v. Papa John's Int'l*, 227 F.3d 489, 497 (5th Cir.2000)). "In other words, these statements amount to mere puffery; consequently, they are not actionable under the Lanham Act." *Id*. *See also Soilworks, LLC v. Midwest Indus. Supply, Inc*., 575 F. Supp. 2d 1118, 1133-34 (D. Ariz. 2008) (holding competitor's statements that it was "innovator" of product that was made from "proprietary ingredients" and "revolutionary state-of-the-art innovation" were not actionable as false advertising); *Anunziato v. eMachines, Inc*., 402 F. Supp. 2d 1133, 1140 (C.D. Cal. 2005) (finding advertising claiming product uses the "latest technology" to be "non-actionable puffery" under California's unfair competition and false advertising statutes); C*ytyc Corporation v. Neuromedical Systems, Inc*., 12 F.Supp.2d 296, 300 (S.D.N.Y.1998) (finding that statement that described new product as "the new 'Gold Standard' " was puffery and not actionable under the Lanham Act); *In re Virtus Inv. Partners, Inc. Sec. Litig*., 195 F. Supp. 3d 528, 538 (S.D.N.Y. 2016) ("Similarly, statements that the AlphaSector strategy is 'dynamic,' 'analytic,' 'quantitative,' or 'proprietary' are mere puffery and too general to cause a reasonable investor to rely upon them") (citations and quotations omitted). Thus, as a

matter of law, Novex's claim that its Crenulin-RCC2 formula is "new," "revolutionary," and "proprietary" is too vague and general be actionable as false advertising.[4]

### B. CromaDex's Assertion that Oxydrene Does not Provide the Promised Benefits

ChromDex's allegations that Oxedrene does not provide the promised benefits are confined to three short paragraphs, quoted here in their entirety:

> Oxydrene also fails to provide any of the health benefits that Novex promises. There is no scientific substantiation for Novex's claims. To the contrary, the available scientific evidence shows that the ingredients in Oxydrene, whether by themselves or in combination, do not provide the promised health benefits. The claims are simply false.
>
> The ingredients in Oxydrene do not and cannot make people "run faster." Nor do they "increase endurance," "maximize aerobic power," "improve physical performance" or "optimize muscle recuperation cycle." Even if the ingredients could provide some exercise benefits, the dose in the product is entirely too low to see any meaningful benefit.
>
> There is no scientific evidence to support Novex's claims. In fact, the "science" section of Novex's website exclusively discusses research regarding one of its other products and does not include any studies or discussion of Oxydrene.

Counterclaim at ¶¶ 53-55. Some of these assertions are simply that Novex lacks scientific substantiation, which will be discussed below. But all of these assertions "are no more than conclusions" and "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. ChromaDex just asserts that the product does not work, does not make people run faster, does not improve physical performance, etc., is disproven by science, and is too low in dosage, without a single factual explanation to support any of these vague and conclusory allegations. All of these are simply "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 557. None of these allegations are stated "with particularity" as required by Rule 9(b) or show facts to make it plausible that ChromoDex is entitled to relief as required by Rule 8.

---

[4] "[T]he determination of whether an alleged misrepresentation 'is a statement of fact' or is instead 'mere puffery' is a legal question that may be resolved on a Rule 12(b)(6) motion." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008).

By way of contrast, Novex's Complaint in this matter does not simply allege in conclusory fashion that Tru Niagen does not work or is disproven by science. Novex's Complaint specifically explains why ChromaDex's advertising is false, including the fact that the dosage present in ChromaDex's product is considerably lower than what ChromDex claims it tested and found efficacious. Complaint at ¶¶ 16-22. The Complaint also cites three specific studies (including studies relied on by ChromaDex) and explains how these studies demonstrate that Tru Niagen does not work as advertised. *See* Complaint at ¶¶ 23-29. ChromaDex's Counterclaim does nothing like this and the Counterclaim is completely devoid of these types of particularized factual allegations. The Counterclaim may conclude that that the product does not work and that science shows it does not work, however, without a single fact alleged to support these bald conclusions the Court is not obligated to accept them. *Iqbal*, 556 U.S. 662, 680 (2009).

### C. ChromaDex's Assertion that Novex Lacks Adequate Substantiation

Claims that a competitor's advertising lacks the legally required level of substantiation are permissible under the Lanham Act.[5] *See e.g. Alpo Petfoods, Inc. v. Ralston Purina Co.*, 720 F. Supp. 194, 213 (D.D.C. 1989) ("representation purportedly supported by clinical research may be deemed false if it is shown that the tests referred to were not sufficiently reliable to permit a reasonable conclusion that the research established the claim made. Representations found to be unsupported by accepted authority or research or which are contradicted by prevailing authority or research, may be deemed false on their face and actionable under Section 43(a) of the Lanham Act") (citation omitted). However, as with all complaints and counterclaims sounding in fraud, Rules 8 and 9(b) still apply. "A pleading that offers 'labels and conclusions' or a formulaic

---

[5] Though, not under California law, as will be discussed below.

recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557; *Iqbal*, 556 U.S. at 678.

The Counterclaim does not plead any facts showing that the clinical research relied on by Novex is unreliable or does not support Novex's claims.[6]  Nor does the Counterclaim provide any specific fact showing that Novex's advertising is contradicted by prevailing authority.  *Alpo Petfoods, Inc*, 720 F. Supp. at 213.  Instead, the Counterclaim pleads only that "[u]pon information and belief there is no scientifically valid human clinical trial on Oxydrene that supports its claims."  Counterclaim at ¶ 55.  The only allegations that ChromaDex makes that would have appear to support this conclusion—pled on information and belief—is the personal opinion of a blogger that a clinical trial "does not seem to exist"[7] and the claim that "[a] search of published literature for 'Crenulin-RCC' or a search for a blend of the ingredients listed on the supplement facts for Oxydrene Elite revealed no studies at all, let alone scientific studies that back its sweeping claims of efficacy."  Counterclaim at ¶¶ 55, 56.  But these allegations do not show anything relevant to Novex's advertising.  Taken in the light most favorable to ChromaDex, all they show is that one blogger and ChromaDex itself claim they were unable to find what they consider to be adequate substantiation, but not that such substantiation does not exist.  This fails to satisfy the burden to state a Lanham Act claim for lack of substantiation by

---

[6] By way of contrast, Novex's Complaint specifically spells out exactly why the studies do not support ChromaDex's claims because the dosage studied was 4 times that present in the product and because specific studies failed to find the benefits that ChromaDex claims.  *See* Complaint at ¶¶ 18-29.

[7] This blogger offers no support for the conclusion that Novex has "[m]isleading advertising which quotes a clinical trial that does not seem to exist," but only asks the question "it seems that this supplement has never been properly tested?"  And when the blog post does cite sources, it often cites non-scientific sources like WebMD.com.  *See* https://www.musclewatchdog.com/oxydrene-elite/.

13

showing that the representations are "found to be unsupported by accepted authority or research or [] are contradicted by prevailing authority or research." *Alpo Petfoods, Inc.,* 720 F. Supp. at 213. The unsupported opinion of one blogger and the alleged failure of ChromaDex to find something do not constitute accepted authority or research nor do they constitute prevailing authority or research. *Id.* Therefore, the Counterclaim fails to state a claim as a matter of law and should be dismissed.

### IV. ChromaDex Fails to State a Claim Under California's Unfair Completion and False Advertising Statutes.

ChromDex's theory that Novex's advertising lacks substantiation is not cognizable under either California's UCL or False Advertising Law. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1091 (9th Cir. 2017) ("California law does not provide for a private cause of action to enforce the substantiation requirements of California's unfair competition and consumer protection laws"); *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App. 4th 1336, 1344 (2003) ("Prosecuting authorities, but not private plaintiffs, have the administrative power to request advertisers to substantiate advertising claims before bringing actions for false advertisement"). Thus, ChromaDex's theory that "Novex's claim that its benefits are 'clinically proven' and 'clinically valid' is similarly false and misleading" because "[u]pon information and belief there is no valid human clinical trial supporting its outlandish claims" cannot support a UCL or FAL claim. *See Kwan v. SanMedica Int'l, LLC*, No. 14-CV-03287-MEJ, 2015 WL 848868, *5 (N.D. Cal. Feb. 25, 2015) ("Plaintiff's argument that Defendant claims support for its representations, when there in fact is no such support, perfectly describes a substantiation claim"); *Engel v. Novex Biotech LLC*, No. 14-CV-03457-MEJ, 2015 WL 846777, at *5 (N.D. Cal. Feb. 25, 2015) (same); *Marshall v. PH Beauty Labs, Inc.*, No. CV 15-02101 DDP, 2015 WL 3407906, (C.D. Cal. May 27, 2015) ("Defendant asserts that [the allegations that the study

14

referred to in the advertising do not support the advertising] constitute a 'substantiation claim' that cannot serve as the basis for a false advertising or UCL claim under California law. The court agrees"); *Racies v Quincy Bioscience, LLC*, 2015 WL 2398268 (N.D. Cal. May 19, 2015); *Franz v. Beiersdorf, Inc.*, No. 14CV2241-LAB EBB, 2015 WL 4659104, *3 (S.D. Cal. Aug. 5, 2015).

The only theories left that ChromDex is legally permitted to assert under California law are its theories that the product does not work and that Novex's advertising is false because it has not obtained new ingredient authorization from the FDA. As already discussed, the former theory fails to provide a single supporting factual assertion beyond bare conclusions and thus fails to satisfy Rus 8 and 9(b) and the latter theory fails to show any plausible connection or explanation as to how it would render any of Novex's advertising false. *Iqbal*, 556 U.S. at 678. The latter theory also amounts to non actionable puffery under false advertising law, including California's unfair competition and false advertising statutes. *See Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1140 (C.D. Cal. 2005). Therefore, ChromaDex's California unfair competition and false advertising claims should be dismissed.

## V.     Conclusion

For all the foregoing reasons, Novex requests that the Court dismiss ChromaDex's Counterclaim in its entirety.

DATED this 28th day of June, 2019.

                                                                                                                                        PRICE PARKINSON & KERR, PLLC

                                             /s/ Jason M. Kerr
                                             Jason M. Kerr
                                             Steven Garff
                                             Attorneys for Plaintiff Novex Biotech, LLC

## CERTIFICATE OF SERVICE

      I hereby certify that on June 28, 2019 I caused the foregoing **PLAINTIFF'S MOTION TO DISMISS COUNTERCLIAM** to be filed using the Court's CM/ECF electronic filing system, which will send notice of filing to all counsel of record.

                                                                                 /s/ Angela Johnson